GEORGE E. BELL, complainant-respondent,

*v.*

JAMES E. PERRY, defendant-appellant.

[Submitted February term, 1932. Decided May 16th, 1932.]

*Mr. Sylvan J. Rauch,* for the complainant-respondent.

*Mr. Philip Goodell,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

This is an appeal from a final decree in chancery.

Complainant and defendant, both actively engaged in other vocations, entered into a partnership agreement for the ownership and operation of an establishment under the name of "Fourth Ward Bowling Alley and Billiard Parlor." The articles of agreement contained, amongst other provisions, a stipulation that the partners were to be equally liable for debts and were to share equally in profits, and that there should "be had and kept at all times during the continuance of their co-partnership, perfect, just and true books of account wherein each of the said co-partners shall enter and set down * * * all money by them or either of them

received, paid out and expended in and about said business."
Fred Jones, a brother-in-law of defendant, was employed to
run the business, but the funds were received by and the
disbursements were paid by the defendant, who spent much
of his off-time at the parlor. After the partnership had been
in operation nearly two years the complainant filed a bill in
chancery wherein he alleged that the defendant had excluded
him from the premises and from the business, and that the
defendant had failed to keep books of account and had re-
fused to render an accounting. The bill prayed a dissolu-
tion of the partnership, the appointment of a receiver for
the business and an accounting by the defendant. The court
of chancery appointed Chester C. Beekman, one of its masters,
to take and state an account and also to be the receiver with
power to conduct the business pending the sale thereof.
Beekman did for a time operate the business, then made a
sale thereof to the defendant for $1,200 and in due season
not only filed his receiver's account but also filed his master's
report making and stating the account of the partnership
and of the dealings and transactions between the partners.
The master's report was excepted to by the defendant but
it was nevertheless confirmed by the decree below before us
on the defendant's appeal.

The first respect in which the decree is said to be erroneous
is that it confirms the master's report. The first exception
to that report was that the defendant was charged with re-
ceipts from the business at the rate of $150 per week for
ninety-six weeks, or $14,400, whereas, as the defendant al-
leges, the actual receipts, according to the testimony produced,
were but $12,179.74, that the actual period of the operation
of the business by the partnership was only ninety-five weeks,
and that during two weeks of that time the complainant was
in control. The actual count of weeks and days from the
time the business began until the receiver actually took con-
trol appears to be ninety-five weeks, five and one-half days,
so there is no appreciable error in this respect. The control
of the business during any part of that time by the com-
plainant was a disputed question of fact which was resolved
against the defendant.

The obtaining of an accounting from the defendant was a difficult and laborious undertaking. Notwithstanding his contractual obligation, he had kept no books. He had no records of what he had actually received. The fact as to money received was ascertained by the master in various ways —by bank deposits, the volume of funds actually disbursed, the testimony of different persons as to what the receipts at various times had been, the volume of business done and the like. None of the exhibits, which appellant's counsel enumerates as "hundreds, if not thousands," are produced before us. It appears from defendant's own testimony that during the first week of the business the receipts were three hundred or four hundred dollars. It also appears that over a limited time he placed the partnership funds in his personal bank account; so that, in addition to the other data, his personal bank books and statements were placed in evidence for what they might show. Jones testified that the receipts at the beginning had been about forty-five dollars per day, running up to fifty dollars per day, though there were times during the summer when the daily receipts ran as low as eleven or twelve dollars, and that even at the giving of his testimony, while the receiver was operating the business, the daily receipts were twenty-one or twenty-two dollars. The complainant testified that the examinations made by him of the receipts showed on average of two hundred dollars per week. The contention of the defendant is that inasmuch as one Janney, an accountant who assisted Perry in preparing for the hearing before the master, compiled a statement of receipts showing a grand total of $12,179.80, the master and, later, the court were bound by this evidence and that any higher figure was only a guess and therefore erroneous. The figures found and reported by the master were not a mere guess; they constituted a finding of fact with substantial support in the evidence. That finding was an approximation, in the sense that it was based in part upon the maximum and minimum receipts in proof and in part upon the sums known to have passed through Perry's hands or to have reached his bank accounts as compared with his ascertainable

sources of income outside of this business. The absence of more precise evidence was due to the failure of the defendant to keep the records that the partnership agreement made it his duty to keep. Although the defendant was not a trustee yet his position was partly fiduciary. A more stringent rule has been pronounced against trustees in *Blauvelt* v. *Ackerman, 23 N. J. Eq. 495; affirmed, 25 N. J. Eq. 570*, where it was said that if a trustee kept his accounts in a negligent way, or kept no account whatever of his receipts, all presumptions should be strongly against him and obscurities and doubts should not operate to his advantage, but adversely.

The next exception to the master's report is that the complainant was not charged with the receipt of a certain sum of $150 from the proceeds of the business. The complainant denied the receipt thereof and the finding of fact was adverse to the defendant. On this, and on the other disputed factual questions, we are satisfied with the master's conclusions from the evidence. It is further said that the defendant should have been granted an allowance in compensation for his work in connection with the business over and above the share allotted to the complainant. But this contention has no support in the terms of the partnership agreement. In the absence of an agreement a partner is not entitled to remuneration for acting in the partnership business (*Coddington* v. *Idell, 29 N. J. Eq. 504*), unless he be a surviving partner winding up the partnership affairs. Uniform Partnership act (*2 Cum. Supp. Comp. Stat. 150-99f*).

The other respects in which the decree in chancery is said to err are restatements of the points already discussed. A cross-appeal taken by the complainant has not been prosecuted.

The decree below should be affirmed.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Donges, Van Buskirk, Kays, Hetfield, Dear, Wells, Kerney, JJ. 14.

*For reversal*—None.